IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOCAL UNION 1357 OF THE LABORERS INTERNATIONAL UNION Of NORTH AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>PACE INDUSTRIES AIRO DIE CAST, Inc., PACE INDUSTRIES, INC., PACE INDUSTRIES, INC. t/d/b/a PACE INDUSTRIES/AIRO DIVISION, PACE INDUSTRIES LATROBE PLASTIC COMPANY, PACE INDUSTRIES, LLC,<br><br>Defendants. | Civil Action No. 2:21-cv-1098 |

## COMPLAINT

Plaintiff herein, by and through its attorneys, Richard P. Gilardi and Gilardi, Oliver & Lomupo, file this complaint against Defendant above named, and for its cause of action allege:

## THE PARTIES

1. Plaintiff Local Union 1357 of the Laborers International Union of North America (hereinafter, "Union" or "Plaintiff Union") is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §152(5) of the National Labor Relations Act of 1947 (hereinafter, "Act").

2. Defendants Pace industries, Airo Die Cast,Inc., Pace Industries, Inc., Pace Industries, Inc., t/d/b/a Pace industries Airo Division, Pace Industries Latrobe Plastic Company, and Pace

Industries, LLC (hereinafter, "Employer" or "Defendant Employer") are all employers in an industry affecting commerce within the meaning of 29 U.S.C. §152(2) of the Act.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 29 U.S.C. §185 of the Act.

4. The Plaintiff Union and the Defendant Employer transact business within the Western District of Pennsylvania, (Loyalhanna, Westmorland County, Pennsylvania) and the cause of action arose within the district.

## THE CAUSE OF ACTION

5. The Plaintiff Union represents production, fabrication, and maintenance employees employed by the Defendant Employer at a plant located in Loyalhanna, Westmorland County, Pennsylvania.

6. The Union and the Employer are parties to a collective bargaining agreement (hereinafter, "CBA") covering the work location which extends from May 15, 2019 through May 15, 2024. The CBA provides for the arbitration of grievances; a grievance is defined as "any dispute arising under this agreement between the Company and the Union." (CBA, Article VXIII, p. 24). A true and correct copy of the CBA is attached hereto as Exhibit A to the Complaint.

7. The CBA also contains a Hospitalization Insurance/Health Benefit Plan clause (hereinafter, described as the "health insurance clause") which states in pertinent part:

> "10.1 The parties agree eligible associates shall have the option to elect one of Highmark's PPO Blue plans or Community Blue plans. The option to select one of these plans shall occur approximately in the month of June for an effective date of July 1 each year during the term of the Agreement.
>
> The level of benefits provided under the above plans shall be more particularly described in their specific Summary Plan Documents as required by law.

> 10.2 Coverage as described in Article 10.1 under the stated plans shall be available for full-time Associates, spouses and their dependents with benefits effective the first day of the month immediately following successful completion of the eligible Associates' probationary peiod.  Eligible Associates must make application to participate and pay their premium contribution by their due date.
>
> 10.4 Participating Associates will be permitted to continue to participate in the health care plan as permitted by the COBRA law.  Enrollment and re-enrollment may be restricted by Plan terms or by law.
>
> 10.5 Level of Coverage: Highmark PPO Blue Plans or Highmark Community Blue plans. If these specific plans are no longer available, plans will be selected that are as similar as these plans as is feasible from both a plan design and a cost perspective.
>
> (a) The Company shall schedule annual open enrollment to allow Associates to make their annual elections for each plan year of this Agreement.  Those elections will go into effect on or about July 1st of each plan year of this Agreement.  In all years of this Agreement, the Company will establish and post all plan cost changes, either increases or decreases, to the plans provided in Article 10.1.  All changes in the costs, either increases or decreases, will be calculated and delivered to both the Union and the Company each year on or about April 1 by Highmark.
>
> 10.11 The Company and the Union agree to use their best efforts to comply with the Federal guidelines under Patient Protection and Affordable Care Act "PPACA" and agree to work together during the life of this Agreement to incorporate potential changes provided by law including but not limited to the offering of health care exchanges, coverage levels and contributions.  The parties acknowledge that changes as required by law to this Agreement will be subject to discussion and agreement by both parties."

(CBA, pp. 15-19).

8. In late July of 2021, the Union came to learn that a few bargaining unit members were without health insurance, even though they fully expected to be covered.  As the days passed, more members came forward complaining that their Employer-based health insurance coverage had lapsed, even though they expected coverage.  As of the date of this filing, it is believed and

averred that as many as six (6) bargaining unit members are without health insurance coverage since July 1, 2021.

9. The Union has come to learn that bargaining unit members who have lapsed health insurance coverage lost their coverage for one of three reasons: 1- The app (WorkDay) required for renewal/election did not function properly and members who thought they were enrolled through the app were, in fact, not enrolled; 2- The third party administrator present to assist members during the enrollment period erroneously utilized the app in such a way that members thought they had coverage, after seeking his help, when, in fact, he did not secure their health insurance coverage; and 3- Some members didn't do anything as the coverage period rolled from last year to this year, because, in prior years, there was no need to re-enroll if there were no coverage changes, and those members didn't want coverage changes, but it was miscommunicated to them that a failure to re-enroll would cause a lapse in health insurance.

10. The Union has made multiple attempts to reach out to the Employer to both identify all persons in the bargaining unit without health insurance after the renewal period, and to get the situation remedied. The Employer has shown zero interest in fixing the problem, and has gone as far as telling the Union that those without health insurance will have to wait for next year's enrollment and effective coverage date, in July of 2022. Moreover, the Employer is without federally mandated documents such as the Summary Plan Description and Plan Document, both of which would detail how to re-enroll Associates if their enrollment had been done so improperly.

11. The Union filed a grievance against the Defendant Employer on July 27, 2021 alleging the Defendant's failure to provide health coverage for various bargaining unit members, as required by the CBA, Article 10. In arbitration, the Union will ask an arbitrator to order that

the Employer must follow the CBA and re-open the enrollment period so that those bargaining unit members without coverage can enroll for their negotiated health insurance benefit.

12. The Union's grievance is arbitrable under the grievance procedures of the CBA and there is a high probability of success on the merits of the grievance.

13. Historically, the arbitration process between the Union and the Employer has taken nearly one year to complete from the time a grievance is filed. The matter of union members being without health care and denied coverage in the midst of a global health pandemic is unconscionable and the obvious consequences are grievous.

14. Unless the Court orders an expedited arbitration of the grievance in this matter, preserves the status quo ante until an arbitrator can rule, and enjoins the denial of coverage and the refusal to permit re-enrollment, until an arbitration award is issued, the Union and its members will suffer substantial irreparable harm for which there is no adequate remedy at law because no monetary award will be able to compensate the Union for the harm that will be suffered by the elimination of health insurance coverage provided under the CBA.

15. Federal courts are permitted to enjoin conduct stemming from a labor dispute when that conduct frustrates the arbitral processes. *Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 127, 1282 (3d Cir. 1979). The arbitral process is frustrated when the arbitrator's award is no more than a "hollow formality" because when rendered it could not return the parties substantially to the status quo ante. *Id*. Here, if the Defendant is permitted to deny health insurance benefits to the members of Local 1357, people could lose their lives, and suffer issues ranging from pre-natal care to end of life decisions. Stripping families of health care benefits could undeniably have catastrophic consequences.

WHEREFORE, for the reasons as set forth herein, and as more fully described in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support thereof, the Plaintiff requests the following relief and further requests that the Defendant be enjoined as follows:

(a) To issue a temporary restraining order by ordering an expedited arbitration of the grievance and enjoining the Employer from continuing to deny Union members the ability to re-enroll in their negotiated health insurance benefit until such time as an arbitrator rules on the grievance, with the plaintiff and defendant to select an arbitrator and have the grievance heard no later than _____; and

(b) To retain jurisdiction to require that the Defendant fulfill its promise that all "eligible Associates shall have the option to select one of Highmark's PPO Blue Plans or Community Blue Plans."

(c) To order other relief as the Court deems necessary and proper.

Respectfully submitted,

/s/Richard P. Gilardi_____
Richard P. Gilardi, Esquire
PA I.D. No. 66973
Gilardi, Oliver & Lomupo
200 First Avenue, Suite 400
Pittsburgh, PA  15222
(412) 391-9770
(412) 391-9780 (facsimile)
rpgilardi@lawgol.com